is here. He did sign the briefs, and I'm very familiar with the case. If he needs a helping hand, would it be okay if I speak as well? Or is that permissible? Are you a licensed attorney? No, I'm not. Okay, then. No, we really can't let you explain the unauthorized practice of law, so I'm sorry, I can't let you. Okay, I just wanted to ask. Okay. But he has hard of hearing. Okay. We'll try to speak out. Thank you so much. Go ahead, Mr. Kwok. Good afternoon, Your Honors. Thank you very much. The reason why I'm here today is to object the right thing that is very outrageous, because I have a case back-to-back with the Schwab case. Earlier, the other lawyer, the trustee lawyer, they did a lot more work than my personal It's only $99,000 that has been paid. Okay? Now, my objection is that I never had any hearing in the lower court that I can oppose, because on the lower court, Bear Russell is very, very mean to me. Every time I want to say something, he just shuts me up. It should be like the gate. I cannot say anything. And I'm over it. I just sold the building for $245,000 in Alhambra, which I've owned since 1980. Okay? So, so the Schwab case, so it goes, okay, let's go back to my personal case, $400,000 in the pot, which is Bear Russell holding it. That's why I had to go to Burr. He's the one that told me, you can't go to Burr. He was really nice to me. And all of a sudden, he just turned. He was in open court. You can't go to Burr, Mr. Kwok, this and that. I said, okay. So later on, he kept stopping there to me. And I sat in open court one time. I said, Your Honor, it seems like I cannot hire a lawyer. No money, no justice. I have been open court with the transcript. So I'm still pursuing that. Okay? Now, today, I just want to let all Your Honors know, the $170,000, excluding the trustee fee, has to, needs to be paid out again. And $400,000, I'm negative. I'm close to homeless. I'm 73 years old. I'm not 87. And I've been in the United States over six decades. So, there was no hearing that I go to Burr in the lower court. But they won't let me. Every time when lawyers, these high-power lawyers, when they submit something to Burr Russell, he just gives out my money like candy. I have no control over it. I don't think that's fair. I'm not going to fight. Thank you. Thank you. Thank you. Thank you very much. Thank you, sir. Thank you. As you're released. Thank you. If it may please the court, Eric DeLay, standing guilty as Jerome Krasnoff for the appellee. Your Honor, Your Honors, the sole issue here is whether the bankruptcy court abused its discretion in approving the fees and costs of professionals. In particular, the fees and costs of Danning Hill. We focused our brief on that because that appears to be from this issue brought to the court. That's where the frustration lies with the appellant. Your Honor, Your Honors, there was, during the course of the filings of it, we filed, I think, two interim fee applications, one final fee application, and a supplement. At every point in time, Judge Russell thoroughly considered those fees and costs. The record was replete with evidence that he considered. There was an issue with the order on the final fee applications. And because of that, there was, in a sense, the trustee submitted a final order that Judge Russell signed that understated our fees by like $20,000 or so. When that error was promptly considered, or we saw it, we filed a motion to correct that. And it was at that stage that, after the fees had been originally approved, that the appellant complained. And his issues were brought before the bankruptcy court on the motion to correct the order. And Judge Russell, at that point, considered what would have been, at that point, a late objection to the fee applications. But in any event, they were considered. And Judge Russell said on the record at that time that he thoroughly reviewed them. Thereafter, Judge Russell held a second hearing on the motion to correct the order, just so that he could say once again on the record that he had thoroughly reviewed all of the fee applications and, quote, found them appropriate. With those findings and review of the evidence, it's clear that Judge Russell met the standard under 330 for approval of the fees and costs, that he had everything before him to make that decision. He even considered the late opposition to those fee applications. It's also worth pointing out, as we do in our briefs, that it is Mr. Kwok's burden to point out what was objectionable in the fee applications. And at no point in time did he say what that was. There were no tasks, no time entries, no nothing. He wanted sort of a trial, undefined, an evidentiary hearing, we've called it, because that seemed to be the most appropriate. Judge Russell said he wasn't entitled to one because there were no facts in dispute, even in his objection. There were no facts in dispute. It's also worth noting, as I put in the record, that the reason there were a final fee application and a supplement, it sort of was caused by Mr. Kwok's own actions. And I think it's important to put that into the court's view, because had the case promptly closed, if the asset that was later disclosed, it wasn't scheduled by Mr. Kwok, had been disclosed properly, it would have been dealt with earlier in the case. It wouldn't have been this delay. There wouldn't have been the increased fees due to the investigation. And you can see from our final supplement that the fees and costs attributable that really caused the case to go up was due to a rushed investigation that we had to deal with, this asset that was late disclosed. But, again, all of that time and energy and entries, excuse me, were before Judge Russell when he approved our fees and he found them to be appropriate. Unless the court has any other issues or questions, I'm happy to go through any other, but I'm fine. Thank you. No questions. Thank you. Thank you very much. Thank you. Yeah, Mr. Kwok, you have a few minutes left. If you'd like to say something else, please come on up. Thank you very much. I just want to mention the one thing that the payout on my estate was so convoluted. It's so convoluted. Converted, convoluted, yeah. Such as on the Schwab, in the lower court, they already established I'm the 100% owner on K1. I'm 100% owner. And they pay out $40,000 to Mr. Kirk Lang. I know. All because they're a lawyer and I don't. So I don't understand that. Okay. Thank you very much. Thank you. All right, the matter is submitted and we'll be issuing a written decision as soon as we can. Thank you very much. And that's our last case, so panel's recessed. All right.
judges: FARIS, LAFFERTY, and SPRAKER